### In re FALWELL EXCAVATING COMPANY, INC., Debtor.

#### Bankruptcy No. 682–00329–L.

United States Bankruptcy Court,
W.D. Virginia,
Lynchburg Division.

March 5, 1985.

See also, Bkrtcy., 40 B.R. 315.

Ross C. Hart, Roanoke, Va., for Associates Commercial Corp.

J. Gorman Rosenberger, Jr., Lynchburg, Va., for debtor.

Sherwood S. Day, Lynchburg, Va., Trustee.

## MEMORANDUM OPINION

WILLIAM E. ANDERSON, Bankruptcy Judge.

The matter before the Court is the motion of Associates Commercial Corporation for allowance of its priority administrative claim ("superpriority") pursuant to 11 U.S.C. § 507(b).

The Court finds that this is a core proceeding and properly before it. 28 U.S.C. § 157(b)(2)(B).

## FACTS

The material facts in this matter are not in dispute and have been stipulated to by the parties.

On October 17, 1979 the debtor entered a conditional sales contract by which it purchased a Wabco Model 111A motor scraper from Richmond Machinery and Equipment Company. The purchase price paid by the debtor was $122,160.00. This motor scraper was used in the debtor's business.

On October 18, 1979 Richmond Machinery and Equipment Company assigned its rights under the aforementioned conditional sales contract to Associates Commercial Corporation.

The debtor filed a petition for relief in this Court under Chapter 11 of the United States Bankruptcy Code on April 19, 1982. On that date the payoff balance on the conditional sales contract covering the motor scraper was $55,232.97.

In May, 1982 Associates Commercial Corporation filed a motion requesting that the automatic stay of 11 U.S.C. § 362 be lifted so that it could enforce its security interest in the motor scraper or, alternatively, that the Court grant it adequate protection as set forth in 11 U.S.C. § 361. The Trustee in Bankruptcy and Associates Commercial Corporation thereafter stipulated that the value of the collateral motor scraper was $35,000.00.

On August 26, 1982 the court entered a Consent Order requiring the debtor to make monthly cash payments to Associates Commercial Corporation as adequate protection against the decrease in value of its interest in the collateral. These payments were to begin September 1, 1982 in the amount of $800.00 per month. By order of the Court entered August 30, 1983 this amount was increased to $900.00 per month. The total of these cash payments from September, 1982 through May, 1984, had they all been made, would have been

$17,700.00. However, total payments of only $12,300.00 were made by the debtor during this period.

On May 24, 1984 Associates Commercial Corporation filed a motion for relief from the stay because the debtor had fallen six monthly payments behind. The motor scraper was subsequently sold for $17,500.00 which was paid to Associates Commercial Corporation.

Associates Commercial Corporation now requests the Court to grant superpriority status to its claim of $5,200.00 pursuant to 11 U.S.C. § 507(b).

## DISCUSSION

■ Adequate protection in the form of periodic cash payments can be provided to an entity which holds an interest in property of the estate when the imposition of the automatic stay of 11 U.S.C. § 362 or the use of that property by the debtor-in-possession under 11 U.S.C. § 363 will result in a "decrease in the value of such entity's interest in such property". 11 U.S.C. § 361(1). This is what was done in the present case.

■ During the period from September, 1982 to June, 1984 the motor scraper decreased in value from $35,000.00 to $17,500.00. By its order of August 26, 1982 the Court required the debtor-in-possession to make monthly cash payments to Associates Commercial Corporation to protect it against loss in the value of its collateral occasioned by the debtor's continued possession and use of the scraper. Had all of the ordered payments actually been made Associates Commercial Corporation would have received a total of $17,700.00 as protection against the $17,500.00 dimunition in value of the collateral motor scraper. Obviously, the adequate protection ordered was in fact "adequate".

However, because the debtor fell into arrears in his ordered payments there was a deficiency of $5,200.00 between the amount which the motor scraper decreased in value and the total amount of cash payments made by the debtor. It is this amount which Associates Commercial Corporation claims should be afforded superpriority status under 11 U.S.C. § 507(b).

11 U.S.C. § 507(b) sets forth the criteria for when a creditor's claim shall be given priority over every other allowed unsecured claim, a "superpriority":

If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

11 U.S.C. § 507(b).

"... [W]hereas adequate protection shields the creditor in the first instance from impairment in the value of his 'interest in property,' the superpriority was intended to recapture value unexpectedly lost during the course of a case: 'It establishes a statutory fail-safe system in recognition of the ultimate reality that protection previously determined the "indubitable equivalent" ... may later prove inadequate. *In re Marine Optical, Inc.,* 10 B.R. 893 (Bkrtcy.App., D.Mass.,1981)." *In re Callister,* 15 B.R. 521, 528 (Bkrtcy.D.Utah, 1981). Such is not the situation in this case. In fact, the adequate protection payments ordered in this case have since proven to have been a surprisingly accurate prognostication of the actual loss in value of the collateral.

.. [T]he superpriority is born when adequate protection fails. But whether adequate protection has failed depends upon whether and how it has been provided." *... [C]reditors may acquiesce in some harm to collateral for business or other reasons notwithstanding the stay.* In these situations and others which may

arise, any impairment in value may not be attributable to the stay. Hence, not every decline in value must be recompensed, only those which, but for the stay, could be and probably would be prevented or mitigated." *In re Alyucan Interstate Corp.*, 12 B.R. 803 (Bkrtcy.D. Utah 1981). (emphasis added).

*In re Callister,* supra at 530.

According to the Supplement to Stipulation submitted by Associates Commercial Corporation, the debtor, in making its ordered monthly payments, began a series of bounced checks and missed payments as early as February, 1982. As a result the debtor was behind $5,400.00 in its payments when Associates Commercial Corporation filed its motion for relief from the stay in May, 1984.

The debtor and the Trustee in Bankruptcy question why Associates Commercial Corporation waited so long and allowed such a great amount of defaulted payments to accumulate before requesting relief from the stay. In its Rebuttal Memorandum Associates Commercial Corporation states that it did so out of "tolerance" in its attempt to "work with debtors towards recovery rather than against it (sic)." While a general attitude of cooperation among creditors will certainly make business reorganizations more feasible and successful, creditors make a business decision in not pursuing available remedies. Therefore, while Associates Commercial Corporation should not be penalized for its delay in seeking relief, neither should it be granted a priority above all other creditors for the payments it did not collect.

## CONCLUSION

It is the opinion of the Court that the failure of Associates Commercial Corporation to recover the full value of its collateral motor scraper is not the result of a failure of the adequate protection ordered by the Court. Rather, the Court finds that the failure of Associates Commercial Corporation to receive adequate protection for the entire amount of decrease in the value of its collateral was due to its own business

decision not to require the debtor to strictly maintain the monthly adequate protection payments ordered by the Court. Associates Commercial Corporation shall not be permitted to now step into line ahead of all other unsecured creditors to recover for its unfortunate business decision.

The request of Associates Commercial Corporation for allowance of its $5,200.00 claim as a superpriority under 11 U.S.C. § 507(b) is denied. The appropriate order shall be entered.