In re HALL NESTLETREE II ASSOCIATES, Debtor.

GUARANTY FEDERAL SAVINGS BANK, & Hunter Savings Association, Plaintiffs,

v.

HALL NESTLETREE II ASSOCIATES, Defendant.

Bankruptcy No. 88–04885–H3–11.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Nov. 9, 1989.

Mary A. Costley, Gilpin, Paxson & Bersch, Houston, Tex., for debtor.

Paul J. McConnell, III, Susan J. Taylor, De Lange, Hudspeth & Pitman, Houston, Tex., for plaintiffs.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

Came on for consideration the First Application of Gilpin, Paxson and Bersch for Interim Compensation for Fees and Expenses through December 31, 1988 filed by Mary A. Wilson, the attorney for Debtor. After considering the pleadings, memoranda, and arguments of counsel, the court makes the following Findings of Fact and Conclusions of Law and enters a separate Judgment in conjunction herewith. To the extent any findings of fact herein are construed to be conclusions of law, they are hereby adopted as such. To the extent any conclusions of law herein are construed to be findings of fact, they are hereby adopted as such.

On June 6, 1988 a Voluntary Chapter 11 Reorganization Petition was filed on behalf of Debtor, Hall Nestletree II Associates. Thereafter, on February 8, 1989, the attorneys for Debtor, Gilpin, Paxson and Bersch, filed an Application for Interim Compensation for Fees and Expenses from June 3, 1988 through December 31, 1988. An objection to the interim compensation was filed on March 30, 1989 by Guaranty Federal Savings Bank ("GFSB") and Hunter Savings Association ("HSA") and a response filed by Debtor on April 7, 1989. Thereafter, a hearing was held and the matter taken under advisement.

The issue presented to this court for resolution is whether Debtors can pay their attorney's fees from cash collateral which was derived from rents and proceeds of property owned by Debtor but subject to a security interest held by GFSB and HSA. A review of the jurisprudence on the issue reveals no controlling United States Supreme Court case law. However, the issue has become the subject of a marked split among the various Circuit Courts of Appeal of the United States with the Fifth Circuit not yet having addressed the issue.

The Second Circuit and the Sixth Circuit have held that attorney's fees cannot be awarded from assets in which a creditor has an undercollateralized security interest unless there is a showing under Section 506(c) that the professional's fees resulted in preservation of collateral that has benefited the secured creditor or the creditor impliedly consents to bearing the costs of the attorney's services. *In re Flagstaff Food Service Corporation,* 739 F.2d 73 (2nd Cir.1984); *In re Darnell,* 834 F.2d 1263 (6th Cir.1981). Under Section 506(c) a trustee or debtor-in-possession may recover costs expended in preserving or disposing of property wherein a creditor has a security interest if the expense benefitted the holder of the claim. The Second Circuit in *Flagstaff* found the creditor in that case to have had a superpriority interest in the cash collateral due to the creditor's providing postpetition financing. The Second Circuit has subsequently stated that *Flagstaff* applies only to cases where there is a superpriority interest. *In re Stable Mews Associates,* 778 F.2d 121, 123 (2nd Cir. 1985).

The Tenth Circuit Court of Appeals has allowed payment of interim fees even where there are no unencumbered assets available in the estate. *In re Callister,* 15 B.R. 521 (Bankr.D.Utah 1981), *aff'd,* appeal dismissed, 673 F.2d 305 (10th Cir.1982), 13 B.C.D. 21 (10th Cir.1984). There, despite the existence of a superpriority claim, the Tenth Circuit agreed with the District Court's reasoning that Section 331 of the Bankruptcy Code acts as an incentive to attorneys to represent debtors in bankruptcy proceedings, and thus leads to efficient management of a debtor's estate. As such, the court allowed the debtor's attorney's fees to be paid out of cash collateral even though a creditor held a superpriority claim.

It is important to note that the *Callister* case addressed a ranking issue. The creditors in *Callister* had a superpriority claim and asserted that no interim fee payments could be made prior to the satisfaction of that claim. The court ruled that interim fees could be paid on an interim and preeminent basis. In the instant case there is no superpriority claim. Therefore, the question is whether the reasoning used to establish payment of cash collateral in *Callister* can be applied to provide for granting in-

terim financing where, as here, the creditor with the security interest in the cash collateral, and not the superpriority claimant, is competing with the professional fee applicant.

That issue has been addressed in *In re Energy Cooperative, Inc.*, 55 B.R. 957 (Bankr.N.D.Ill.1985), where the court noted that the battle is staged between § 331, providing for payment of interim fees, and §§ 361–364, requiring adequate protection of the creditors rights. The court stated that in those instances "*Callister* appears to effectuate more closely the intent of Congress by allowing discretion to balance the competing interests of *secured* and/or superpriority claimholders and professional fee applicants on a case-to-case basis.... and allows payment of fees where there are assets on hand to cover all priority claims, *Callister, supra,* or, if as here, it appears likely that there will be sufficient assets in the estate to cover priority claims." (emphasis added) *In re Energy Cooperative*, 55 B.R. at 967.

The *Callister* opinion was similarly noted in, *In the Matter of Georgia Steel, Inc.*, 19 B.R. 834 (Bankr.M.D.Georgia 1982) where that court held that "the fact that an award of interim compensation would be paid from cash collateral is not grounds to deny an award of interim compensation." There, the creditors that complained against the use of their cash collateral were found to be adequately protected, and the court allowed the payment of interim fees. *Georgia Steel*, 19 B.R. at 837.

The major concern in this instance is the possibility that the cash collateral will be depleted leaving GFSB and HSA without sufficient security interest to provide adequate protection. However, awarding interim fees is in the discretion of the court, and the determination of whether to award the interim fees from cash collateral in this case rests on facts before the court. The facts which this court finds relevant follow.

The court takes judicial notice of the transcript of the hearing on Emergency Motion for use of Cash Collateral, February 13, 1989, Docket No. 81, and of Docket Nos. 48, 74, and 88. This court found in the context of 11 U.S.C. § 362 and 11 U.S.C. § 363 motions that GFSB and HSA's cash collateral was adequately protected and could be used under carefully monitored circumstances. In addition, through the efforts of Debtor and its counsel a new subscription offering was made to former limited partners of the Debtor and to other investors which resulted in generating unencumbered assets to fund the reorganization plan.

The court notes that GFSB and HSA failed to file an objection to the payment of fees out of cash collateral when it was first proposed and disclosed by Debtor in his Application to Employ Attorneys Nunc Pro Tunc. That Application was approved by Order of June 29, 1988. The objection was raised only after the filing of Debtor's counsel's Fee Application.

This court notes that it is important that debtors be represented by competent counsel throughout bankruptcy proceedings to ensure protection and fair treatment to all parties involved. *Callister*, 15 B.R. at 535. Without encouragement and assurances of income for services, it is doubtful that such counsel will be inclined to serve as debtors' counsel. Accordingly, this court finds that Debtor's counsel is entitled to compensation and that under the circumstances of this case it is appropriate to allow interim payment to be made out of the available cash collateral. Such an interim award is subject to adjustment at the time of Application for Final Approval of Fees, if it is later determined that the fees were incorrectly awarded. *2 Collier on Bankruptcy*, ¶ 331.03 (15th ed. 1989).

As to the specific amounts requested, analysis of the twelve factors set forth in the cases of *Lawler v. Teofan (In re Lawler)*, 807 F.2d 1207 (5th Cir.1987), *In re: First Colonial Corporation of America*, 544 F.2d 1291 (5th Cir.1977), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977), and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), governs the Court's determination of the propriety of the fees required by Applicant:

The court finds that those standards were met, and that the work performed

was necessary to be done toward preservation of the Debtor's estate, and was performed competently and at rates reasonable in this community, and that the amounts requested for fees and expenses may be, and hereby are, approved. The court notes that the United States Trustee did not object to the fees sought. (Docket No. 87.) However, it is not yet known whether the Debtor can successfully reorganize. A plan has been proposed by Debtor, and opposed at confirmation hearing by GFSB and HSA. It is under advisement; should it be approved, even then the eventual success or failure of the plan will not be known immediately. Where, as here, the value of the underlying collateral is subject to the shift in value over time which can occur with improved real property, and to certain disputes over deferred maintenance costs, the court considers it appropriate to withhold a portion of the fees sought. *See, In re Georgia Steel,* at page 839. Accordingly, seventy-five percent of the fees requested are hereby authorized to be reimbursed to counsel, in the amount of $20,076.56. The requested expenses are authorized to be reimbursed in the full amount of $2,489.17, for a total of $22,565.73 as interim compensation for fees and expenses from June 3, 1988 through December 31, 1988.

This authorization is without prejudice to Gilpin, Paxson and Bersch's reapplying upon final application for that portion of its fees which is hereby approved but not hereby authorized to be paid from cash collateral.