**In re PRECAST STRUCTURES, INC., Debtor.**

**Bankruptcy No. 88–03384–H3–11.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

March 1, 1990.

Ronald J. Blask, Houston, Tex., for debtor.

Robert A. DeWitt, Sheinfeld, Maley & Kay, Houston, Tex., for First Interstate Bank of Texas.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

Came on for consideration the initial Application for Interim Compensation, Reimbursement of Expenses, and Limited Use of Cash Collateral, as amended, filed by Ronald J. Blask, the attorney for Debtor. After considering the pleadings, memoranda, and arguments of counsel, the court makes the following findings of fact and conclusions of law and enters a separate Judgment in conjunction herewith. To the extent any findings of fact herein are construed to be conclusions of law, they are hereby adopted as such. To the extent any conclusions of law herein are construed to be findings of fact, they are hereby adopted as such.

On April 15, 1988 a Voluntary Chapter 11 Reorganization Petition was filed on behalf of Debtor, Precast Structures, Inc. Thereafter, on October 6, 1988, the attorneys for Debtor, Ronald J. Blask and Associates, filed an Application for Interim Compensation, Reimbursement of Expenses, and Limited Use of Cash Collateral ("Application for Interim Compensation") for the period from April 14, 1988, through September 25, 1988. Attorney for Debtor subsequently amended the Application for Interim Compensation twice. Fees in the amount of $51,830.00 and expenses in the amount of $3,399.50 were requested for approval and after applying a previously paid retainer of $35,080.35, movant requested the court to award a net amount of $20,149.15. An objection to the Second Amended Application for Interim Compensation was filed on November 23, 1988 by First Interstate Bank of Texas ("First Interstate"). Thereafter, a hearing was held and the matter taken under advisement.

First Interstate is the Debtor's largest secured creditor, having filed a proof of claim for $1,733,885.84. First Interstate's claim is secured by all of Precast's assets, including cash collateral representing proceeds from accounts receivable. This court takes judicial notice of the July 29, 1988 hearing on Debtor's use of cash collateral.

At that hearing this court found that the value of equipment and real property securing First Interstate's claim was in excess of $2,000,000.00 and that the cash collateral of First Interstate was adequately protected.

■ The issue presented to this court for resolution is whether Debtors can pay their attorneys fees from cash collateral subject to a security interest held by First Interstate. A review of the jurisprudence on the issue reveals no controlling United States Supreme Court case law. However, the issue has become the subject of a marked split among the various Circuit Courts of Appeal of the United States, with the Fifth Circuit not yet having addressed the issue.

The Second and Sixth Circuits have held that attorney's fees cannot be awarded from assets in which a creditor has an undercollateralized security interest unless there is a showing under Section 506(c) that the professional's fees resulted in preservation of collateral that has benefited the secured creditor or the creditor impliedly consents to bearing the costs of the attorney's services. *In re Flagstaff Food Service Corporation*, 739 F.2d 73 (2nd Cir. 1984); *In re Darnell*, 834 F.2d 1263 (6th Cir.1981). It is important to note in this instance that the creditor is not undercollateralized and the cash collateral has been found to be adequately protected.

The Tenth Circuit Court of Appeals has allowed payment of interim fees even where there are no unencumbered assets available in the estate. *In re Callister*, 15 B.R. 521 (Bankr.D.Utah 1981), appeal dismissed, 673 F.2d 305 (10th Cir.1982), 13 B.C.D. 21 (10th Cir.1984). There, despite the existence of a superpriority claim, the Tenth Circuit agreed with the District Court's reasoning that Section 331 of the Bankruptcy Code acts as an incentive to attorneys to represent debtors in bankruptcy proceedings, and thus leads to efficient management of a debtor's estate. As such, the court allowed the Debtor's attorney's fees to be paid out of cash collateral even though a creditor held a superpriority claim.

It is important to note that the *Callister* case addressed a ranking issue. The creditors in *Callister* had a superpriority claim and asserted that no interim fee payments could be made prior to the satisfaction of that claim. The court ruled that interim fees could be paid on an interim and preeminent basis. In the instant case there is no superpriority claim. Therefore, the question is whether the reasoning used to allow payment of cash collateral in *Callister* can be applied to provide for granting interim financing where, as here, the creditor with the security interest in the cash collateral, and not the superpriority claimant, is competing with the professional fee applicant.

That issue has been addressed in *In re Energy Cooperative, Inc.*, 55 B.R. 957 (Bankr.N.D.Ill.1985) where the court noted that the battle is staged between § 331, providing for payment of interim fees, and §§ 361–364, requiring adequate protection of the creditors' rights. The court stated that in those instances *Callister* appears to effectuate more closely the intent of Congress by allowing discretion to balance the competing interests of *secured* and/or superpriority claimholders and professional fee applicants on a case-to-case basis ... and allows payment of fees where there are assets on hand to cover all priority claims, *Callister, Supra,* or, if as here, it appears likely that there will be sufficient assets in the estate to cover priority claims. *In re Energy Cooperative,* 55 B.R. at 967. (emphasis added)

The *Callister* opinion was similarly noted in *In the Matter of Georgia Steel, Inc.*, 19 B.R. 834, 837 (Bankr.M.D.Georgia 1982) where the Georgia Bankruptcy Court held that "the fact that an award of interim compensation could be paid from cash collateral is not grounds to deny an award of interim compensation." There, the creditors that complained against the use of their cash collateral were found to be adequately protected, and the court allowed the payment of interim fees. *Georgia Steel,* 19 B.R. at 837.

The major concern in this instance is the possibility that the cash collateral will be depleted leaving First Interstate without

**306**

sufficient security interest to provide adequate protection. However, awarding interim fees is in the discretion of the court, and the determination of whether to award the interim fees from cash collateral in this case rests on the facts before the court. The relevant and most important factor is that the creditor here is not undercollateralized and the cash collateral has previously been found to be adequately protected.

This court notes that it is important that debtors be represented by competent counsel throughout bankruptcy proceedings to ensure protection and fair treatment to all parties involved. *Callister,* 15 B.R. at 535. Without encouragement and assurances of income for services, it is doubtful that such counsel will be inclined to serve as debtors' counsel. Accordingly, this court finds that Debtor's counsel is entitled to compensation and that under the circumstances of this case it is appropriate to allow interim payment to be made out of the available cash collateral. Such an interim award is subject to adjustment at the time of Application for Final Approval of Fees, if it is later determined that the fees were incorrectly awarded. *2 Collier on Bankruptcy,* ¶ 331.03 (15th ed. 1989).

As to the specific amounts requested, analysis of the twelve factors set forth in the cases of *Lawler v. Teofan (In re Lawler),* 807 F.2d 1207 (5th Cir.1987), *In re First Colonial Corporation of America,* 544 F.2d 1291 (5th Cir.1977), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977), and *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), governs the Court's determination of the propriety of the fees requested by Applicant.

The court finds that those standards were met, and that the work performed was necessary to be done toward preservation of the Debtor's estate, and was performed competently and at rates reasonable in this community, and that the amounts requested for fees and expenses may be, and hereby are, approved.

Therefore, this court approves the fees requested in the amount of $51,830.00 and expenses in the amount of $3,399.50. Af-

ter deduction of the retainer from this amount, the total additional monies herein awarded is the sum of $20,149.15, representing $19,535.99 in unreimbursed fees for legal services and $613.16 in unreimbursed out of pocket expenses, to Ronald J. Blask and Associates for their interim compensation for fees and expenses from April 14, 1988 through September 25, 1988, and enters a separate Judgment herewith.