**In re TRI–COUNTY WATER
ASSOCIATION, INC.,
Debtor.**

**Bankruptcy No. 87–30105.**

United States Bankruptcy Court,
D. South Dakota, C.D.

Sept. 23, 1988.

Thomas Lloyd, Pierre, S.D., for Creditor —Farmers Home Admin.

David L. Bergren, Ft. Pierre, S.D., for debtor.

## MEMORANDUM DECISION

### IRVIN N. HOYT, Chief Judge.

This case discusses objections raised to an interim application for approval of Debtor's counsel's attorney's fees. For the following reasons the objections are sustained and the application is denied.

Tri–County Water Association, Inc. filed this Chapter 11 Petition on June 22, 1987. The Debtor operates a rural water system on the Cheyenne River Sioux Reservation in north central South Dakota. The facilities presently used by the Debtor were funded by state and federal grants exceeding $10,000,000.00 and an FmHA loan of approximately $3,500,000.00.

FmHA is the only major creditor, submitting a proof of claim for $3,428,837.16. The remainder of the creditors hold unsecured claims which total less than $2,500.00. Both the Debtor and FmHA have submitted proposed plans and disclosure statements. The Debtor's proposed plan allows FmHA a secured claim of $348,141.00 after subtracting liquidation expenses of $7,654.00.[1] It provides the agency an unsecured claim of $3,018,-539.00. The plan proposes to pay the secured claim in full. The FmHA unsecured claim would receive any income remaining after payment of other claims. The FmHA plan does not determine the agency's secured status, but does propose to pay the debt in full.

Appended to the Debtor's attorney's application for an interim fee is an itemized statement totalling $9,806.50 in fees billed at $85.00 per hour. Added to this is $540.33 of sales tax and $1,003.25 in expenses, for a total of $11,350.08. Deducted from this amount is a $6,300.00 payment the applicant received as a prepetition re-

tainer. The Debtor therefore requests an order approving $5,050.08 in attorney's fees, sales tax and expenses.

FmHA objected to the application on two grounds. First, the agency asserts it holds a security interest in "virtually all" of the Debtor's assets, and that the Debtor's attorney's fee cannot be paid from its collateral. The second objection alleges that fees may not be paid until Debtor's counsel's services have resulted in a tangible benefit to the estate.

### Standards of Interim Compensation

Section 331 of the Code expressly allows any professional person employed under Section 327 to apply to the Court for interim compensation.[2] The interim compensation statute incorporates Section 330, which allows "reasonable compensation for actual, necessary services," which amount is to be determined based upon various factors, and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1) & (2). A court approved interim application constitutes an administrative expense of the first priority. 11 U.S.C. §§ 331, 330, 503(b)(2) & 507(a)(1); *State Bank of Waubay v. Bisgard*, 80 B.R. 491 (D.S.D.1987). The award of interim compensation and reimbursement, essentially a question of the timing and amount of payment of an administrative expense claim, is within the discretion of the Court. *In re Barron*, 73 B.R. 812 (Bkrtcy.S.D.Cal.1987); *In re American Resources Management Corp.*, 51 B.R. 713 (Bkrtcy.D.Utah 1985); *In re New England Carpet Co.*, 28 B.R. 766 (Bkrtcy.D.Vt. 1983), *aff'd.* 38 B.R. 703 (D.C.Vt.1983), *aff'd* 744 F.2d 16 (2d Cir.1984).

■ It is the applicant's burden of proof to establish the compensability of an application. *E.g. In re Pettibone Corp.*, 74 B.R. 293 (Bkrtcy.N.D.Ill.1987); *Matter of Liberal Market, Inc.*, 24 B.R. 653 (Bkrtcy.S.D. Ohio 1982). In deciding whether to approve an interim application the Court must weigh important competing interests.

---

1. As to the propriety of this deduction see *In re Bellman Farms*, 86 B.R. 1016, 1019 (Bkrtcy.D.S. D.1988).

2. In this case the Court approved the employment of the Debtor's counsel under Section 327 shortly after the Chapter 11 Petition was filed.

Counsel rendering the "exacting services that bankruptcy cases often require," *In re Henning*, 55 B.R. 682, 684 (Bkrtcy.D.S.D. 1985), should not have to finance their representation by being required to forego compensation until full administration—a period which may amount to years. *See* 2 *Collier on Bankruptcy* ¶ 331.02 & .03 (1988). On the other hand the Court must weigh the interests of preserving the estate and protecting its various classes of creditors. *See Henning.*

*Analysis*

■ The Court agrees with those courts which state that as a general rule interim debtor's attorney's fees may not be paid from an undersecured creditor's collateral. *In re Cascade Hydraulics and Utility Service, Inc.*, 815 F.2d 546 (9th Cir.1987); *In re Flagstaff Food Service Corp.*, 739 F.2d 73 (2nd Cir.1984); *Matter of Trim–X, Inc.*, 695 F.2d 296 (7th Cir.1982); *American Resources, In re Fleeman*, 73 B.R. 579 (Bkrtcy.M.D.Ga.1987); *In re Birdsboro Casting Corp.*, 69 B.R. 955 (Bkrtcy.E.D.Pa. 1987). *See also,* 3 *Collier on Bankruptcy* ¶ 507.02[2] (15th ed. 1988); 1 W. Norton, *Bankruptcy Law and Practice,* § 12.02 (1981); *Bellman Farms; In re New England Carpet Co.*, 744 F.2d 16 (2nd Cir. 1984); *In re Staunton Industries, Inc.*, 74 B.R. 501 (Bkrtcy.E.D.Mich.1987); *In re Nana Daly's Pub, Ltd.*, 67 B.R. 782 (Bkrtcy.E.D.N.Y.1986); *In re Kinderhaus Corp.*, 58 B.R. 94 (Bkrtcy.D.Minn.1986).[3] Such an award would contravene the distributional scheme of the Bankruptcy Code. As the *American Resources* Court explained:

Payment of professional fees in Chapter 11 cases is a favored object of the Bankruptcy Code, but is no more favored than protecting the rights of creditors with secured claims. As a general rule, expenses of administration must be satisfied from assets of the estate not subject to liens. A secured creditor's interest in its collateral is a substantive property right created by nonbankruptcy law which may not be substantially impaired when bankruptcy intervenes. Generally, the only valid liens that are subordinated to administration expenses are tax liens and ERISA liens. 11 U.S.C. 724(b) and (d)[.] A secured creditor is not to be deprived of the benefit of its bargain and will be protected in bankruptcy to the extent of the value of its collateral. Only surplus proceeds are available for distribution to creditors of the estate and administrative claimants. Therefore, absent equity in the collateral, administrative claimants cannot look to encumbered property to provide a source of payment for their claims.

51 B.R. at 719 (citations omitted).

Chief District Judge Donald J. Porter of this District has issued an opinion on a similar topic. In State Bank of *Waubay v. Bisgard, supra,* Debtor's counsel sought a retainer after converting his client's case from Chapter 7 to Chapter 12. It was held that the Bankruptcy Court's approval of the interim fee application was improper because a larger superpriority claim remained unpaid.[4] Judge Porter explained that while administrative expense claims for attorney's fees are given the highest priority provided for in Section 507, superpriority administrative expenses have still a higher priority under Section 364(c)(1). Allowing payment of the interim fees improperly ignored this priorities rank.[5]

---

**3.** The Court acknowledges that at least one District Court appears to have held to the contrary. *Wilson Freight Co. v. Citibank, N.A.* (In re Wilson Freight Company), 21 B.R. 398 (S.D.N.Y. 1982) (creditor's committee attorney's fees). However, even this case has been interpreted consistently with the above general rule. *See In re S & S Industries, Inc.*, 30 B.R. 395 (Bkrtcy.E.D.Mich.1983) (interpreting *Wilson Freight* as a case where the secured creditor consented to bearing fees).

**4.** The opinion does not reveal the availability of unsecured estate assets to pay the fee claim.

**5.** The Court also acknowledges that there are cases which allow payment of interim fees despite the presence of an unpaid superpriority claim. *See In re Callister*, 15 B.R. 521 (Bkrtcy. D.Utah 1981), *appeal dismissed,* 673 F.2d 305 (10th Cir.1982), *aff'd.,* 13 B.C.D. 21 (10th Cir. 1984); *In re Energy Co-op, Inc.*, 55 B.R. 957 (Bkrtcy.N.D.Ill.1985); *In re American Intern. Airways, Inc.*, 47 B.R. 716 (Bkrtcy.E.D.Penn.

As it was improper in *Bisgard* to pay the interim fees from funds to which the superpriority claim had priority, so would it be improper to approve the payment of fees from the collateral to which FmHA has precedence in this case. Although the Court is allowed discretion in deciding whether to award interim fees, in doing so it must make reference to the Code's priorities system. *Flagstaff.*

■ It should be noted that exceptions do apply under which attorney's fees may be paid from an undersecured creditor's collateral. To the extent the professional's fees result in a direct benefit to the secured collateral, they may be recovered from the collateral. *See, e.g., Brookfield Production Credit Ass'n. v. Borron,* 738 F.2d 951 (8th Cir.1984); *Flagstaff; Bellman Farms,* 86 B.R. at 1021. Also, the secured creditor may cause the expense or expressly or impliedly consent to bear the costs from its collateral. *See Flagstaff; Bellman Farms.* It should be added that the attorney may bring a motion for authorization to use cash collateral. 11 U.S.C. § 363(c)(2)(B). *See Fleeman; Georgia Steel; In re Sheehan,* 38 B.R. 859 (Bkrtcy. D.S.D.1984). Of course, such authorization triggers the secured creditor's right to have its interest adequately protected. 11 U.S.C. § 363(e).

■ Addressing the application at hand, the Court concludes the applicant has not met his burden of proof. The applicant refused his opportunity to make a record on his application, and can rely only on the court file to establish compensability. According to the Debtor's disclosure statement and plan the FmHA is woefully undersecured. The agency has expressly claimed a security interest in the Debtor's real property interests and cash on hand, the most likely source of attorney compensation. Although the Debtor's plan states it may be necessary to litigate the existence of a security interest in the estate's personal property, this falls far short of establishing that such collateral is unencumbered. Furthermore, the applicant has not demonstrated that the Debtor has generated unsecured assets since the filing of the petition. *See In re Wabash Valley Power Ass'n., Inc.,* 69 B.R. 471 (Bkrtcy.S. D.Ind.1987); 11 U.S.C. § 552. Under the present circumstances, the request for approval of the interim fee and expense application is denied.

*Prepetition Retainer*

■ Due to the above holding it is unnecessary to examine FmHA's objection that the hours expended are non-compensable because they have not benefited the estate. One important matter does remain, however. As noted at the outset, the prepetition retainer is subtracted from the total fees and expenses incurred to date, and approval for payment of the balance only is requested. By omitting the prepetition retainer amount the applicant implies that Court approval is not required prior to his applying the retainer to fees and costs once they are incurred. Such approval nonetheless is required. *Matter of Independent Sales Corp.,* 73 B.R. 772 (Bkrtcy.S.D. Iowa 1987); *In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569 (Bkrtcy.N.D.Tex. 1986); *Kinderhaus. See also In re Leff,* 88 B.R. 105 (Bkrtcy.N.D.Tex.1988).

The applicant's misconception in this case is by no means uncommon. The observations of Judge Lee M. Jackwig of the District of Iowa regarding the practitioners appearing before her also apply to the bar of this district.

> [S]ome members of the practicing bankruptcy bar in this district either have misunderstood or have ignored the Bankruptcy Code and Rules with respect to prepetition general retainers. Clearly, a retainer obtained by the attorney for the debtor prior to filing the petition for relief, as in this case, is held in trust to the extent it is for services to be rendered

1985); *Matter of Georgia Steel, Inc.,* 19 B.R. 834 (Bkrtcy.M.D.Ga.1982). These cases sometimes state that the professional will be surcharged if upon full administration inadequate funds are available to pay the superpriority claims, or all

administrative expenses equal in priority with the fees expense. *See* 11 U.S.C. § 507(a)(1). Obviously, to the extent these cases are contrary to *Bisgard* they are of no precedential value to this Court.

and for costs to be incurred *during* the pendency of the case and until allowed by the court and ordered paid pursuant to 11 U.S.C. sections 330 and 331, or until the case is closed or until the court otherwise orders.

*Independent Sales Corp.,* 73 B.R. at 775 (emphasis in original) (citations omitted).[6]

■ To further elaborate, court approval is required whenever the compensation sought is to be paid from the estate. *Lavender;* 11 U.S.C. § 330; Bankr.R. 2016. The estate is formed when the petition is filed. 11 U.S.C. § 541(a). In Chapters 7, 11, 12 and 13 the estate is comprised at least partially of all the debtor's interests in property existing at that time. 11 U.S.C. §§ 541(a)(1) and 103. Although the bankruptcy code defines property of the estate, state law determines the debtor's interest in the property. *In re N.S. Garrott & Sons,* 772 F.2d 462 (8th Cir.1985). The general rule is that prepetition retainers are held in trust for the debtor, and the debtor's equitable interest in this trust constitutes property of the estate. *Leff. See also, Independent Sales Corp; Kinderhaus; Chapel Gate Apartments;* 4 Collier on Bankruptcy ¶ 541.14 (15th ed. 1988). After examining South Dakota law, the Court finds no reason to deviate from the general rule in this district. *See* SDCL 55-1-5; *In re Farmers State Bank of Amherst,* 289 N.W. 75 (S.D.1939); *In re Goodrich,* 216 N.W.2d 557 (S.D.1974), *cert. denied,* 419 U.S. 1092, 95 S.Ct. 686, 42 L.Ed. 2d 685 (1974); Code of Professional Responsibility DR 9-102 (SDCL Ch. 16-18 app.) (applicable until July 1, 1988); South Dakota Rules of Professional Conduct Rule 1.15 and comment thereto (SDCL Ch. 16-18, Supp.1988) (effective July 1, 1988). Therefore, that portion of the fees incurred after the petition was filed are property of the estate. Debtor's counsel may remove these funds from the retainer account only after court approval preceded by proper notice of the application. *Lavender.*

■ Despite the applicant's failure to seek court approval the Court does not now require repayment of that portion of the retainer earned or incurred postpetition. The Eighth Circuit Court of Appeals has held:

> Without such prior approval, ordinarily subsequent applications for fees should be denied and the funds received should be ordered returned to the estate. However, in limited circumstances, the bankruptcy court as a matter of fundamental fairness may exercise its discretion and enter a nunc pro tunc order authorizing compensation.

*Lavender v. Wood Law Firm,* 785 F.2d 247, 248 (8th Cir.1986).

The applicant may apply for such a nunc pro tunc order, or refund to the estate that portion of the retainer earned or incurred postpetition. Any objections to a nunc pro tunc application shall be addressed at that time.

This matter constitutes a core proceeding under 28 U.S.C. § 157. This Memorandum Decision shall serve as findings of fact and conclusions of law in this case. The Court shall enter an appropriate Order.

---

**6.** Even fees earned prepetition relating to the bankruptcy case are subject to court scrutiny as excessive, although the attorney need not apply to the court for permission to receive the fees. *Id. See also* 11 U.S.C. § 329; Bankr.R. 2017; *Kotts v. Westphal,* 746 F.2d 1329 (8th Cir.1984).